# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ISABELLA A. *a minor, by her parents David A. and Kiersten A.*,<br><br>                  Plaintiff,<br><br>v.<br><br>ARROWHEAD UNION HIGH SCHOOL DISTRICT, ARROWHEAD UNION HIGH SCHOOL BOARD OF EDUCATION, ARROWHEAD UNION HIGH SCHOOL BOARD OF EDUCATION PERSONNEL COMMITTEE, RYAN MANGAN, and LAURA MYRAH,<br><br>                  Defendants. | Case No. 18-CV-673-JPS<br><br><br><br><br><br>**ORDER** |

Plaintiff is a student at Arrowhead Union High School ("Arrowhead") and a member of the girls' soccer team. She brings this action against the school administration pursuant to 42 U.S.C. § 1983, complaining that she was denied due process and equal protection of the law when she was suspended from participating in four soccer games. The suspension was handed down after she hosted a party at her home during which her fellow students consumed alcohol. The action was originally filed in Waukesha County Circuit Court and was thereafter removed to this Court.

Defendants, collectively referred to herein as "Arrowhead," have moved to dismiss the complaint for failure to state any viable claims for relief. (Docket #15). The motion is fully briefed and, for the reasons stated

below, it will be granted in part and the case will be remanded to state court.

1. **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint on the ground that it fails to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chi.*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* at 480–81.

2. **RELEVANT FACTS**

The following facts are drawn from Plaintiff's complaint. Plaintiff is a sophomore at Arrowhead. As a member of the girls' soccer team, Plaintiff agreed to act in accordance with the school's Parent/Athlete & Co-Curricular Code of Conduct. The code of conduct warns that a student athlete will be suspended from participation in school athletics if, among other things, the student possesses, consumes, or sells alcohol or engages in "criminally related activity," including violations of state law or municipal or county ordinance. (Docket #1-1 at 22). The code provides that for a first offense, the student will be suspended from thirty percent of the games of the current season. *Id.* at 23.

During the weekend of February 10, 2018, Plaintiff invited approximately a dozen fellow students over to her home for a party. Some of them brought alcohol and consumed it at the party. Plaintiff did not possess, provide, distribute, or consume any alcohol at the party, nor did she ask anyone to bring alcohol or know that it would be brought.

Arrowhead administration officials became aware that underage drinking had occurred at Plaintiff's home. According to a transcript of a voicemail left for Plaintiff's father by school administrator Laura Myrah ("Myrah"), Arrowhead officials found photographs depicting Plaintiff posing with others at the party with beer cans visible in the background. *Id.* at 29. Additionally, interviews with other students who attended the party confirmed the presence of alcohol there. *Id.*[1]

On February 22, Arrowhead Activities Director Ryan Mangan ("Mangan") and Associate Principal Debra Paradowski met with Plaintiff to present their belief that she had hosted a drinking party and to gauge her response to the allegations. Plaintiff ultimately admitted that she hosted the party and that alcohol was present. As a result, Mangan informed Plaintiff that she was suspended from athletics and that he would contact her parents.[2]

---

[1]The Court can consider Myrah's statements in the voicemail, including her report about the photographs and other interviews, as Plaintiff herself attached the voicemail transcript to her pleading, it is central to the case, and nothing in her complaint or her arguments on the present motion even hint that Myrah was lying. *See* Fed. R. Civ. P. 12(d); *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).

[2]Plaintiff's complaint says nothing about this February 22 meeting. Defendants accuse Plaintiff of deliberately concealing the fact that it occurred. (Docket #16 at 3 & n.2). In her response brief, Plaintiff is again silent on the matter. *See* (Docket #19 at 7–10). The Court reports the February 22 meeting only

On February 23, Mangan notified Plaintiff and her parents in writing that she had been suspended from participating in thirty percent of the soccer games that season due to her violation of the Code of Conduct. That amounted to four games' worth of suspension. Mangan's letter stated that she had been suspended for "hosting and possessing alcohol the weekend of February 10." *Id.* at 27. Upon receiving the letter, Plaintiff appealed the suspension in accordance with the Code of Conduct to the Appeal Committee.

On March 20, the Appeal Committee held a hearing to consider Plaintiff's appeal. The school district and Plaintiff's father and her attorney presented evidence and testimony at the hearing. The Appeal Committee upheld the suspension. Plaintiff alleges that the decision was based on her hosting of the February 10 party rather than possession of alcohol, as the photographs discussed above were not submitted during that hearing.

Plaintiff then appealed the Appeal Committee's decision to the Personnel Committee. Plaintiff had the opportunity to provide written submissions to the Personnel Committee. On March 28, the Personnel Committee met to consider Plaintiff's appeal of her suspension. Plaintiff was notified by letter on April 9 that the Personnel Committee upheld the suspension.

After receiving the April 9 letter, Plaintiff's father called Myrah to demand further explanation for the suspension decision. She left him a voicemail in response, noting that the evidence they considered included the interview with Plaintiff, interviews with other student attendees, the

---

for consistency of the narrative; whether it actually occurred has no bearing on the disposition of this case.

photograph of the February 10 party, and another photograph showing Plaintiff and another student on a separate occasion pretending to drink wine from a wine bottle. Myrah explained that the suspension was appropriate both because of the code's prohibition on the possession of alcohol and its prohibition on criminal activity, which in this case was contributing to the delinquency of a minor. Further, said Myrah, the suspension could be justified because hosting a party where alcohol was consumed by minors was unbecoming a student athlete.

## 3. ANALYSIS

Plaintiff advances three related constitutional claims. First, she alleges that Arrowhead's conduct during the suspension process violated her right to procedural due process under the Fourteenth Amendment's Due Process Clause. Second, applying principles of substantive due process under the Fourteenth Amendment, she alleges that she was arbitrarily deprived of her constitutionally protected interest in participation in high school athletics. Third, she claims that Arrowhead violated the Fourteenth Amendment's Equal Protection Clause when it suspended her but not the other, similarly situated students at the party. The Court will address each claim in turn. Finally, the Court will consider Plaintiff's remaining claim under Wisconsin state law for a writ of certiorari.

### 3.1 Procedural Due Process

Plaintiff's procedural due process claim arises under the Fourteenth Amendment, which prohibits state officials from depriving individuals of life, liberty, or property without due process of law. *Colon v. Schneider*, 899 F.2d 660, 666 (7th Cir. 1990). Such a claim requires Plaintiff to establish "(1) a cognizable liberty or property interest; (2) the deprivation of that

interest by some form of state action; and (3) the failure to employ constitutionally adequate procedures." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 627 (7th Cir. 2016). Plaintiff's case falters on the first element, as she enjoys no constitutionally protected property interest in participation in interscholastic athletics.

To be entitled to due process, a plaintiff must have a liberty or property interest at stake; not every deprivation rises to the level of constitutional concern. Protectible interests "are not created by the Constitution. Rather, they are created and their dimensions defined by an independent source such as state statutes or rules entitling the citizen to certain benefits." *Goss v. Lopez*, 419 U.S. 565, 572–73 (1975). Further, when examining these sources for qualifying interests, the Supreme Court has instructed that "a person clearly must have more than an abstract need or desire for [a benefit]. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "A 'legitimate claim of entitlement' is one that is legally enforceable—one based on statutes or regulations containing 'explicitly mandatory language' that links 'specified substantive predicates' to prescribed outcomes." *Miller v. Crystal Lake Park Dist.*, 47 F.3d 865, 867 (7th Cir. 1995) (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989)).

The Seventh Circuit has not squarely addressed whether participation in high school athletics is a protected interest. Numerous other Circuits have, however, and the vast majority hold that it is not. *Hamilton v. Tenn. Secondary Sch. Athletic Ass'n*, 552 F.2d 681, 682 (6th Cir. 1976); *Albach v. Odle*, 531 F.2d 983, 984–85 (10th Cir. 1976); *Mitchell v. La. High Sch. Athletic Ass'n*, 430 F.2d 1155, 1158 (5th Cir. 1970); *Hebert v.*

*Ventetuolo*, 638 F.2d 5, 6 (1st Cir. 1981); *Rutledge v. Az. Bd. of Regents*, 660 F.2d 1345, 1352 (9th Cir. 1981); *U.S. ex rel. Mo. State High Sch. Activities Ass'n*, 682 F.2d 147, 153 (8th Cir. 1982); *but see Palmer v. Merluzzi*, 868 F.2d 90, 95 (3d Cir. 1989). District courts within this Circuit have followed the majority view. *See, e.g.*, *Smith v. Chippewa Falls Area Unified Sch. Dist.*, 302 F. Supp. 2d 953, 957 (W.D. Wis. 2002); *A.C. v. Bd. of Educ. for Cambridge Cmty. Unit Sch. Dist. No. 227*, No. 05-4092, 2005 WL 3560658, at *2 (C.D. Ill. Dec. 28, 2005); *Piekosz-Murphy v. Bd. of Educ. of Cmty. High Sch. Dist. No. 230*, 858 F. Supp. 2d 952, 959 (N.D. Ill. 2012).

While the Seventh Circuit has not expressly considered this question, signs suggest that it would join the majority. In *Schaill v. Tippecanoe County School Corp.*, 864 F.2d 1309, 1323 (7th Cir. 1988), the Seventh Circuit, relying on the First Circuit's decision in *Hebert*, observed "that there is room for doubt whether a student has a constitutionally protected liberty interest in being free of the potential stigma associated with removal from an athletic team." Similarly, in *Todd v. Rush County Schools*, 133 F.3d 984, 986 (7th Cir. 1998), the Seventh Circuit found that because students voluntarily undertake extracurricular activities, including athletics, those activities can be viewed more as a privilege than as a right and can be subject to concomitant obligations like drug testing. Thus, it seems highly likely that the Seventh Circuit would join the majority of its sister Circuits and hold that participation in interscholastic sports does not implicate any protectible liberty or property interest.

To stem this tide of adverse authority, Plaintiff says that Wisconsin is unique in its creation of a protected property interest in interscholastic athletic participation. In support, she offers a single decision: *Butler v. Oak Creek-Franklin School District*, 116 F. Supp. 2d 1038 (E.D. Wis. 2000), issued

by another branch of this Court. There, the student athlete was suspended from participation in sports at his high school for repeated violations of the athletic code of conduct, including smoking cigarettes, possessing marijuana, consuming alcohol, and being arrested for disorderly conduct at a local mall. *Id.* at 1042–43. The student asked the court for a preliminary injunction against the enforcement of the suspension. *Id.*

For present purposes, the key feature of *Butler* is that the judge found the student had demonstrated a reasonable likelihood that he enjoyed a protectible property interest in participation in high school athletics. *Id.* at 1049.[3] More specifically, the court determined that the athlete, once he was admitted to a school team, enjoyed a legitimate expectation of being allowed to continue to play so long as he complied with the applicable regulations. *Id.* at 1047. Under those circumstances, the school did not have unlimited discretion to suspend him. *Id.*

To support the conclusion that the athlete had an expectation in continued participation, the court examined the relevant rules and regulations governing school athletics. *Id.* at 1048. First, the school's student handbook implied that the extracurricular athletic activities it offered were available to all as long as students followed the pertinent rules. *Id.* This stood in contrast to other types of activities, such as parking at the school, that could be denied in the school's sole discretion at any time. *Id.* Second, the Wisconsin Interscholastic Athletic Association ("WIAA"), of which the school was a member, required participating

---

[3]The court also found there was no protectible liberty interest implicated in the case, *Butler*, 116 F. Supp. 3d at 1047, but that holding is not relevant here, since Plaintiff argues only that she enjoys a property interest in participating in Arrowhead athletics, (Docket #19 at 2–6).

schools to afford certain process to athletes accused of misconduct; thus, the school would violate WIAA rules if it indeed enjoyed unfettered discretion to suspend athletes. *Id.* at 1048–49. Finally, several Wisconsin statutes and opinions from the Wisconsin Attorney General indicated that discipline related to athletics must be reasonable and cannot be premised solely on accusations in law enforcement records. *Id.* at 1049. Thus, said the court, it appeared that "when a school offers the opportunity to participate in high school athletics, it is an important benefit and can be taken away only in a reasonable manner." *Id.*

The Court respectfully declines to follow *Butler*. First, it is not bound to do so, as decisions of district courts are not binding precedent for anyone, not even the same judge in a later case. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("'A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'") (quoting 18 Moore's Fed. Prac. § 134.02(1)(d) (3d ed. 2011)). Second, in *Smith v. Chippewa Falls Area Unified School District & Board of Education*, No. 01-C-0678-C, 2001 WL 34371694, at *3 (W.D. Wis. Dec. 19, 2001), a branch of the court for the Western District of Wisconsin persuasively explained why *Butler*'s analysis is flawed. Noting that *Butler* stands apart from the majority view, the court in *Smith* proceeded to analyze each of the sources mentioned in *Butler* as giving rise to a legitimate expectation of continued participation in sports.

The primary difficulty with those sources, explained *Smith*, is that they mandate only certain procedures, not specified substantive predicates leading to prescribed outcomes. *Id.* at *2. For example, the cited state statutes govern how law enforcement records could be used in

meting out student discipline without stating that student athletes must be allowed to play in the absence of discipline. *See id.*[4] Similarly, while the Wisconsin Attorney General's opinion and the WIAA rules indicated that student athletic rules must be reasonable, must be applied reasonably, and must afford students an opportunity for a hearing, such provisions created no more than "procedural entitlements," which do not rise to the level of constitutionally protected property interests. *Id.* Further, these were hardly viable sources of law for purposes of formulating a student's substantive rights, as the Attorney General opinion was just that—the state attorney general's interpretation of a statute—and the WIAA rule governs schools but cannot reasonably be viewed as creating enforceable rights for student athletes. *Id.* at *3. Finally, the *Smith* court noted that other schools in the region construed sports participation as a privilege, not a right, making explicit what the handbook in *Butler* left silent. *Id.* Thus, said *Smith*, none of the authorities relied upon in *Butler* could survive close examination. *See id.*

This Court agrees with the thorough and careful reasoning of *Smith*. *Butler*'s key sources of rights offer at best procedural protections for student athletes, and it is well-settled that due process does not reach procedural entitlements. *Cevilla v. Gonzales*, 446 F.3d 658, 662 (7th Cir. 2006); *Olim v. Wakinekona*, 461 U.S. 238, 248–51 (1983) ("Process is not an

---

[4]Indeed, these statutes are even less helpful to Plaintiff's cause now than they were when *Smith* and *Butler* were issued. The statutes have been amended, and they now allow law enforcement records to form the "sole basis" for "taking action against" the student under the school athletic code. Wis. Stat. §§ 118.125(5)(b), 118.127. This is precisely the opposite of what the statutes said when *Butler* was decided. *Butler*, 116 F. Supp. 2d at 1054. Plaintiff apparently did not actually read the current versions of the statutes, for she says nothing about the amendments or how *Butler* remains viable notwithstanding them.

end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."). Just as importantly, much of the *Butler* court's reasoning is premised on silence and suggestion in the cited authorities, not "explicitly mandatory language" connecting "specified substantive predicates" with "prescribed outcomes." *Thompson*, 490 U.S. at 463. For these reasons, the Court parts ways with *Butler*.

Notably, Plaintiff's analogy to *Butler* fails on the facts, even were the Court to adopt *Butler*'s view of the law. Plaintiff leans heavily on Arrowhead's athletic code of conduct, which she reads as creating an expectation of continued participation in Arrowhead sports for players who follow the rules. But Arrowhead's code of conduct for extracurricular activities clearly states that "[a]thletics are a *privilege* and not a right and are made available to students who abide by the rules and regulations as outlined by Arrowhead and the WIAA." (Docket #1-1 at 21) (emphasis in original). Later, the handbook emphasizes that "*[p]articipation in the athletic program at Arrowhead is entirely voluntary and is a privilege that can be revoked*." *Id.* at 22 (emphasis in original). Quite unlike the student in *Butler*, then, here Plaintiff knew full well that athletic participation was a privilege only. To be sure, the Arrowhead handbook does not "strongly impl[y]" that Plaintiff need only observe the applicable rules to continue playing on Arrowhead sports teams. *Butler*, 116 F. Supp. 2d at 1048.

In an effort to shore up the reasoning of *Butler* against *Smith* and the other authorities discussed above, Plaintiff cites Wis. Stat. § 118.133(1)(a), which governs participation in interscholastic athletics and other extracurricular activities by home-schooled students. It provides, in relevant part:

> A school board shall permit a pupil who resides in the school district and is enrolled in a home-based private educational program to participate in interscholastic athletics in the school district on the same basis and to the same extent that it permits pupils enrolled in the school district to participate.

*Id.* Plaintiff's reliance on this provision is entirely misplaced, as it says nothing about the content of the property interest at stake. It tells school districts that home-schooled students must be afforded athletic participation to the same extent as students who attend school in the district's school building. Crucially, it does not define the right to participation in athletics. As the Court has explained, none of the available sources of state law plausibly suggest that Plaintiff enjoys a legitimate expectation of continued participation in interscholastic athletics at Arrowhead. The Court would expect the same result to obtain for any similarly situated home-schooled student.

Consequently, this Court joins the majority of courts that have faced this issue and finds that Plaintiff enjoyed no protectible property interest in continued participation in Arrowhead's soccer program. Because Plaintiff has not alleged the deprivation of a constitutionally protected interest, her procedural due process claim fails without consideration of whether or what procedure she was actually afforded. *Roth*, 408 U.S. at 570–71.

### 3.2 Substantive Due Process

Plaintiff's next claim is for violation of her substantive due process rights. Substantive due process is a concept that has developed to protect against certain state action regardless of the fairness of any procedural protections the plaintiff was afforded. *Cnty. of Sacramento v. Lewis*, 523 U.S.

833, 840 (1998); *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It arises when state action infringes upon a fundamental liberty interest, *Reno v. Flores*, 507 U.S. 292, 302 (1993), or when state action is "arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare," *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926). When fundamental rights are involved, a challenged action must survive strict scrutiny, meaning it must be narrowly tailored to a serve a compelling state interest. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Otherwise, the reviewing court employs only rational basis review, asking whether the action in question is rationally related to a legitimate state interest. *Lee v. City of Chi.*, 330 F.3d 456, 467 (7th Cir. 2003); *Romer v. Evans*, 517 U.S. 620, 631 (1996).

Plaintiff concedes that she is not complaining of the deprivation of a fundamental right. As a result, she can succeed in her challenge to Arrowhead's suspension only if she shows that it was egregiously arbitrary. *See Dunn v. Fairfield Comm. High Sch. Dist. No. 225*, 158 F.3d 962, 966 (7th Cir. 1998); *Sabol v. Walter Payton College Preparatory High Sch.*, 804 F. Supp. 2d 747, 753 (N.D. Ill. 2011). In other words, she must be able to show that the challenged action "shocks the conscience" and is "unjustifiable by any governmental interest." *Remer v. Burlington Area Sch. Dist.*, 286 F.3d 1007, 1013 (7th Cir. 2002) (quotation omitted); *Piekosz-Murphy*, 858 F. Supp. 2d at 960.

Plaintiff cannot surmount this high bar. Arrowhead temporarily suspended her from participating in soccer matches after it concluded that she hosted a drinking party at her home. Disciplining those who permit alcohol consumption at a party, even if they do not themselves supply the alcohol or drink it, is well within the school's legitimate prerogative to

prevent underage students from indulging in alcohol. Plaintiff does not challenge this conclusion. (Docket #19 at 10).

She does, however, contest the premise, arguing that she did not in fact violate the code of conduct because being present when drinking occurs is not a violation of the code. *Id.* at 11. In her view, the school acted arbitrarily by punishing her for conduct not violative of the rules. *Id.* at 11. Moreover, she makes clear in her complaint that Arrowhead was not permitted to offer constantly shifting justifications for the suspension, including possessing alcohol, hosting a drinking party, violating state or local law, and engaging in conduct unbecoming an athlete. *See* (Docket #1-1 at 10–12).

She is wrong for at least two reasons. First, because the Court is engaging in deferential rational basis review, the school's action must be upheld if any legitimate justification for it can be conceived. *Heller v. Doe*, 509 U.S. 312, 320 (1993). Arrowhead is not confined to the reasons it actually gave at the time. *Id.* Because post-hoc rationales are acceptable, the Court finds it is conceivable that Plaintiff violated the code of conduct by hosting a party where drinking occurred, even though she did not provide or consume any alcohol. She openly admits in her complaint that she hosted a party at her home where alcohol was consumed, and she does not challenge the authenticity of the photographs Myrah described in her voicemail that depict her with her friends in the foreground and beer in the background. Indeed, notably absent from her complaint is any suggestion that she did not become aware during the party that her fellow students were drinking. Plaintiff's role in permitting drinking to occur at her party can rationally be described as violative of numerous provisions

of Arrowhead's athletic code of conduct, including the prohibition on possessing alcohol and on conduct unbecoming a student athlete.[5]

Second, in school discipline cases the Supreme Court has made clear that federal courts are not fora for relitigating evidentiary minutiae. *Wood v. Strickland*, 420 U.S. 308, 326 (1975); *Sabol*, 804 F. Supp. 2d at 754; *Piekosz-Murphy*, 858 F. Supp. 2d at 961. "[Section] 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations." *Wood*, 420 U.S. at 326. Instead, courts defer to a school's classification or construction of its own rules, even if erroneous, so long as they were not so irrational or arbitrary as to shock the conscience. *Sabol*, 804 F. Supp. 2d at 754; *Tun v. Whitticker*, 398 F.3d 899, 903 (7th Cir. 2005) ("It is one thing to say that officials acted badly, even tortiously, but—and this is the essential point—it is quite another to say that their actions rise to the level of a constitutional violation."). Applying this additional layer of deference, it no longer matters whether Plaintiff is correct that "hosting" a drinking party is not technically a violation of the Arrowhead athletic code of conduct. Assuming she is right, the Court nevertheless cannot say that Arrowhead's slight overextension or misapplication of the rules was irrational or unrelated to the school's legitimate interest in curbing alcohol use by students. Substantive due process offers Plaintiff no remedy for such a technical misstep. *Gaunder v. Leckrone*, 366 F. Supp. 2d 780, 788 (W.D. Wis. 2005) (even if school administrators erred in meting out

---

[5]Arrowhead could also have rationally believed that Plaintiff was lying about her level of participation in the drinking aspect of the party. At the present stage, the Court must accept as true her allegations that she did not drink and did not know anyone else would do so. But at the time it made its suspension decision, Arrowhead did not have to extend Plaintiff any presumption of truth.

appropriate punishment, no substantive due process claim would lie where the error did not shock the conscience).[6]

For all these reasons, the Court finds that Plaintiff's substantive due process claim is without merit and must be dismissed.[7]

### 3.3    Equal Protection

Plaintiff's final claim is for denial of equal protection of the law. If the state classifies the plaintiff based on race, alienage, national origin, or when the classification impinges on a fundamental right, strict scrutiny is

---

[6] It is worth pointing out that Plaintiff completely ignores the line of case law regarding deference to a school's interpretations of its rules. In fact, she cites not a single case in the one-page section of her brief devoted to her substantive due process claim. (Docket #19 at 10–11).

[7] Though not discussed by either party, there is likely an additional reason Plaintiff's substantive due process claim cannot stand: she has adequate alternative state-law remedies available to her. The Seventh Circuit teaches that "in cases where the plaintiff complains that [she] has been unreasonably deprived of a state-created property interest, without alleging a violation of some other substantive constitutional right or that the available state remedies are inadequate, the plaintiff has not stated a substantive due process claim." *Kauth v. Hartford Ins. Co. of Ill.*, 853 F.2d 951, 958 (7th Cir. 1988); *Doherty v. City of Chi.*, 75 F.3d 318, 325 (7th Cir. 1996); *Montgomery v. Stefaniak*, 410 F.3d 933, 939 (7th Cir. 2005). Such is the case here, as Plaintiff claims she was deprived of a state-created property interest—continued participation in Arrowhead sports—but does not successfully allege the violation of any other substantive constitutional right. Additionally, Plaintiff's complaint includes a claim for a writ of certiorari under Wisconsin common law. Certiorari is a procedure whereby Wisconsin courts can review the decisions of municipalities, administrative agencies, or inferior tribunals. *Ottman v. Town of Primrose*, 796 N.W.2d 411, 420 (Wis. 2011). The court's review encompasses whether the entity under review had proper jurisdiction, applied the correct law, did not act arbitrarily or unreasonably, and came to conclusions reasonably supported by the available evidence. *Id.* Certiorari is, therefore, a state-created remedy for Plaintiff's alleged injury, as it provides a mechanism for review of Arrowhead's suspension decision. Plaintiff does not suggest that the certiorari procedure is inadequate to protect her interests, and the Court does not see any infirmities in it. Consequently, the availability of state remedies stands as yet another obstacle to Plaintiff's substantive due process claim.

applied. *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1002 (7th Cir. 2006). Plaintiff's case is not of this variety, so the extent of the Court's review is only whether Arrowhead's punishment decision had a rational basis. *Id.* Specifically, for equal protection claims based on a "class of one," as Plaintiff advances here, the question is whether the plaintiff was intentionally treated differently from others similarly situated and the difference in treatment was rationally related to a legitimate purpose. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's equal protection theory has two aspects. First, she complains that she received a four-game suspension from the soccer team for actions that did not actually violate the code of conduct. For reasons adequately covered above, her interpretation of the code of conduct is not controlling. Arrowhead's decision to suspend her for hosting a drinking party was rationally related to legitimate purposes. *Sabol*, 804 F. Supp. 2d at 754; *Gaunder*, 366 F. Supp. 2d at 787.

Second, Plaintiff argues that she was suspended from athletics while other Arrowhead students who attended the party and did not drink received no suspension, and one student who did drink received only a one-game suspension. This argument goes nowhere, as these students are not similarly situated to Plaintiff. *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005) (to be considered "similarly situated," comparators must be closely comparable to the plaintiff in all material respects). Undoubtedly Plaintiff hosted a drinking party and knew that alcohol was present, whether or not she helped provide it or drank any. It is not irrational to punish more harshly one who knowingly facilitates consumption of alcohol by providing a venue. In this sense, the other attendees were less culpable. Arrowhead did not

act capriciously in concluding that hosting a party with the knowledge that alcohol was being consumed by students was enough to warrant increased punishment. Thus, Plaintiff's equal protection claim must be dismissed as well.

### 3.4 Certiorari

The final claim that needs to be considered is Plaintiff's request for a writ of certiorari under Wisconsin common law. Certiorari exists to provide judicial review of the decisions of municipalities, administrative agencies, or inferior tribunals. *Ottman*, 796 N.W.2d at 420. This claim must be dismissed without considering its merits, as it lies outside the Court's subject-matter jurisdiction.

First, the parties are residents of this State, so diversity jurisdiction under 28 U.S.C. § 1332 is not available. Second, the certiorari claim arises under state law, not federal law, so federal question jurisdiction under 28 U.S.C. § 1331 is likewise absent. Finally, with all of Plaintiff's other federal claims dismissed,[8] there are no claims within the Court's original jurisdiction to which this claim could tethered by the exercise of supplemental jurisdiction under 28 U.S.C. § 1367.

---

[8]Plaintiff's complaint sets forth seven items delineated as "claims for relief": (1) a claim of denial of procedural due process; (2) a claim of denial of substantive due process; (3) a claim of denial of equal protection; (4) a claim of deprivation of constitutional rights under 42 U.S.C. § 1983; (5) a claim for temporary injunction; (6) a claim for permanent injunction; and (7) a claim for a writ of certiorari under Wisconsin law. The first three, as well as the last, have been expressly considered in this Order. The other three have not, as they are not actually separate claims for relief. Section 1983 is the procedural vehicle for bringing an action against a state actor for constitutional violations, and temporary and permanent injunctions are types of relief that can be awarded, not legal claims. The Court has addressed all of the proper legal claims, notwithstanding the odd structure of Plaintiff's pleading.

Section 1367(c)(3) allows a district court to decline to exercise supplemental jurisdiction over a state-law claim where the court has dismissed all the claims within its original jurisdiction. *Id.* § 1367(c)(3). Indeed, in such circumstances "the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). Given the gestational stage of this case, the unique state-law issues implicated in the certiorari claim, and the need to promote judicial economy, fairness, and comity with state courts, this matter will be remanded to the state court for further proceedings on Plaintiff's certiorari claim. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351–52 (1988); *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514–15 (7th Cir. 2009).

4.   **CONCLUSION**

For the reasons stated above, the Court finds that Plaintiff has not plausibly alleged a violation of her constitutional rights. As a result, the Court is obliged to grant Defendants' motion to dismiss those claims with prejudice. As to the state-law certiorari claim, it must be remanded to the state court for its consideration.

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss (Docket #15) be and the same is hereby **GRANTED in part** as stated herein;

**IT IS FURTHER ORDERED** that Plaintiff's claims under 42 U.S.C. § 1983 for violation of her rights under the Fourteenth Amendment be and the same are hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that this action, including Plaintiff's remaining claim under Wisconsin law for a writ of certiorari, be and the

same is hereby **REMANDED** to the Waukesha County Circuit Court for further proceedings.

Dated at Milwaukee, Wisconsin, this 16th day of July, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge